**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 96-50594.

Felix TAMEZ; Alice Tamez, Individually and as Guardian & Parent of Joseph Tamez, and Mary Alice Tamez, Felix Tamez, Jr., and Debbie Tamez, Plaintiffs,

Alice TAMEZ, Individually and as Guardian & Parent of Joseph Tamez, Mary Alice Tamez, Feliz Tamez, Jr., and Debbie Tamez, Plaintiff-Appellant,

v.

CITY OF SAN MARCOS, TEXAS; Daniel Misiaszek, Defendants-Appellees.

Aug. 13, 1997.

Appeal from the United States District Court for the Western District of Texas.

Before JOLLY, DUHÉ and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

In this case, a magistrate judge granted judgment as a matter of law in favor of defendant Daniel Misiaszek, voiding a $275,000 civil jury verdict against him on the basis of official and qualified immunity. Plaintiffs, the survivors of Felix Tamez, appeal the magistrate's grant of judgment as a matter of law. Because we find that Misiaszek was immune from suit under both federal and state law, we affirm.

I

San Marcos Police Officer Daniel Misiaszek, with three other police officers, responded to a "shots fired" call at a private residence at around 9:30 one night. When Misiaszek arrived at the house, he walked through the back yard to investigate. He saw two

men and two women who apparently did not look alarmed or suspicious to him.  Misiaszek then walked around the front of the house.  From the front porch, Misiaszek and fellow officer Paul Culin heard noises from inside the house, including loud footsteps and the sounds of a radio or television.

At this time, Steven Marmolejo walked out of the house with a piece of chicken and a glass of water, apparently unaware that the officers were on the front porch.  Misiaszek recognized Marmolejo as a suspect in a pending burglary investigation, and the officer began to question him about the gun shots.  Marmolejo told the officers on the porch that he had not heard any gunshots.[1]

As Officer Culin questioned Marmolejo on the porch, Misiaszek went to the doorway to speak to whomever was still in the house.  Witnesses at trial offered conflicting testimony about what Misiaszek knew at this point;  Marmolejo testified that he told Misiaszek that there was no one in the house, while Misiaszek testified that Marmolejo said Tamez was inside.  It is undisputed that Misiaszek did not have a search warrant and that he had not previously attempted to interview the person who made the "shots fired" report.  The front door of the house was open, but the screen door was shut.  Misiaszek opened the screen door, announced "Police Officer," and leaned into the doorway to speak to whomever was inside;  Marmolejo and Culin corroborated this account.

When he leaned into the residence, Misiaszek saw Tamez, who

---

[1]Marmolejo later testified in a deposition that he lied to protect Felix Tamez, who was his uncle.  Marmolejo also testified that he had known Tamez had fired a gun in the back yard that night and that he had seen Tamez holding the gun just before he had walked out onto the porch.

was sitting on a chair with his back to the door, apparently talking on the telephone. Misiaszek did not know that Tamez was holding a revolver in his right hand or that Tamez had been drinking with Marmolejo and was severely intoxicated. Tamez's blood alcohol level was determined later that evening to be about .34. Officer Culin testified that he heard Misiaszek say, "Are you all right, sir?" Tamez turned to face the Misiaszek and pointed his gun at the officer. Misiaszek did not know that Tamez's weapon contained only empty shell casings; Tamez had fired all of the bullets in his back yard earlier in the evening. Misiaszek stepped quickly into the house, crouched, and fired six rounds from his service revolver. Misiaszek missed Tamez with most of his shots but hit him once in the right arm and once in the left leg. The shots wounded Tamez but did not kill him.

After securing Tamez's weapon, Misiaszek checked Tamez for vital signs and called for emergency medical assistance, in accordance with police policy. Paramedics treated Tamez both at the scene and at a local hospital. The San Marcos Police Department conducted an internal review and a grand jury inquiry into the shooting. Both cleared Misiaszek of any criminal or procedural wrongdoing.

After his release from the hospital, Tamez filed the instant action, alleging various federal and state law claims against Officer Misiaszek and the City of San Marcos. In addition, the state brought a criminal action against Tamez for attempted capital murder in relation to the incident. Tamez pleaded *nolo contendere* to the charge. Tamez subsequently died of health problems that the

family stipulates are unrelated to the shooting. The plaintiffs in this action, family members of Felix Tamez, filed a motion to substitute parties under Fed.R.Civ.P. 25, and the magistrate granted surviving family members permission to continue the suit in the place of Felix Tamez. They did not request and the magistrate judge did not grant them intervention to proceed on their own behalf.

After further discovery, the plaintiffs filed a motion for partial summary judgment, alleging that Misiaszek had violated Tamez's Fourth Amendment rights as a matter of law. Misiaszek and the City responded and filed their own cross-motion for summary judgment, asserting qualified and official immunity from suit. The court denied both motions for summary judgment in their entirety. Misiaszek filed an interlocutory appeal from the court's denial of his dispositive motion, and we dismissed the appeal for want of jurisdiction because of contested fact issues.

The case went to trial before a magistrate judge, and at the close of plaintiffs' case, both Misiaszek and the City moved for judgment as a matter of law ("JML") under Fed.R.Civ.P. 50(a), asserting various immunity defenses. The court granted judgment for the City of San Marcos on all claims and dismissed the suit against the city. The court then allowed the case to proceed against Misiaszek only. At the close of all the evidence, Misiaszek's lawyer asked the court how it intended to deal with the immunity issues, but he did not move for a JML at the close of the evidence. The judge noted at the close of all evidence that he was convinced that Misiaszek was immune from suit. The judge

nonetheless decided to submit the case to the jury, because the parties had already reached the end of the trial. The judge indicated that he would decide the immunity issues from the bench after the verdict, if necessary.

The jury found: (1) that Misiaszek had violated the Fourth Amendment when he opened Tamez's door without warrant or permission; (2) that Misiaszek was negligent in causing Tamez's injuries; and (3) that Misiaszek did not employ unconstitutionally excessive force in the shooting. The jury awarded $25,000 in actual damages and $50,000 in emotional injury damages to Tamez's estate and $200,000 in damages to his family members,[2] but it did not award punitive damages. After the verdict, Misiaszek filed a motion for JML, primarily asserting his qualified and official immunity defenses. The court granted Misiaszek's motion, holding that the officer enjoyed both qualified and official immunity from suit. Plaintiffs timely appealed.

II

Misiaszek moved for JML at the close of the plaintiffs' case but failed to renew his motion at the close of all of the evidence. We have held that failure to request JML (or its predecessors JNOV

---

[2]Misiaszek challenged on appeal the magistrate judge's decision to allow the jury to award $200,000 in damages to the family members in their individual capacities. The family members were parties to the suit only in the place of Felix Tamez under Fed.R.Civ.P. 25. *See also Felan v. Ramos,* 857 S.W.2d 113, 118 (Tex.App.1993, writ denied) (under Texas Survival Act, damages recoverable are only those *the decedent* sustained while alive); Tex. Civ. Prac. & Rem.Code § 71.021 (Vernon 1995). We express serious doubt about the propriety of the instruction and about the award of individual damages to the family under federal or state law; however, because we affirm the magistrate judge's decision to vacate the entire jury award, we need not reach this alternative ground for decision.

and directed verdict) at the close of all the evidence waives JML after the jury verdict. *Allied Bank-West, N.A. v. Stein,* 996 F.2d 111, 115 (5th Cir.1993); *McAnn v. Texas City Refining, Inc.,* 984 F.2d 667, 670 (5th Cir.1993). Rule 50(b) provides that, after a jury verdict, either party may "renew" a motion for JML made at the close of all the evidence. Accordingly, we have held that a district court may not issue a JML after the verdict unless the parties make the proper motion at the close of all of the evidence—a party cannot renew a motion it has not previously made. *Allied Bank,* 996 F.2d at 114-15.

Although Misiaszek's lawyer moved for JML at the close of the plaintiff's case, that motion will not suffice to preserve the motion after the verdict. The law of this circuit holds that, by introducing its own evidence after the plaintiff's case in chief, and by failing to renew the motion for JML, the defense waived its motion for judgment after the verdict. *McAnn,* 984 F.2d at 671; *see also* 5A Jeremy C. Moore et al., Moore's Federal Practice ¶ 50.05[1] (2d ed. 1992). Therefore, absent a motion for JML at the close of all of the evidence, the magistrate should not have allowed Misiaszek to make a Rule 50(b) motion after the verdict. *McAnn,* 984 F.2d at 671; *Scheib v. Williams-McWilliams Co.,* 628 F.2d 509, 511-12 & n. 1 (5th Cir.1980).

In the past we have excused certain "de minimis" departures from technical compliance with Rule 50(b). *McAnn,* 984 F.2d at 671. *See, e.g., Davis v. First Nat'l Bank,* 976 F.2d 944, 948-49 (5th Cir.1992) (excusing *de minimis* failure to comply with letter of Rule 50(b)), *cert. denied,* 508 U.S. 910, 113 S.Ct. 2341, 124

L.Ed.2d 251 (1993); *Merwine v. Board of Trustees,* 754 F.2d 631, 634-35 (5th Cir.) (same), *cert. denied,* 474 U.S. 823, 106 S.Ct. 76, 88 L.Ed.2d 62 (1985); *Bohrer v. Hanes Corp.,* 715 F.2d 213, 216-17 (5th Cir.1983) (same), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984). We have applied Rule 50(b) not as an exercise in technical hair-splitting, but in the context of its particular purposes as well as in the context of "securing a fair trial for all concerned." *Merwine,* 754 F.2d at 634.

This case does not fit the profile of the traditional case in which we have allowed a *de minimis* exception. As we pointed out in *McAnn,* the cases in which we have excused noncompliance have had five things in common: (1) we concluded that allowing the motion would satisfy the purposes (if not the letter) of Rule 50; (2) the trial court had reserved, not denied, a motion for JML at the close of the plaintiff's case; (3) the defendant called no more than two witnesses before closing; (4) only a few minutes elapsed between the motion for JML and the conclusion of all the evidence; and (5) the plaintiff introduced no rebuttal evidence. In *McAnn,* we found that none of these factors was present. 984 F.2d at 672. Therefore we held that the case involved a complete failure to follow the requirements of the rule, not a *de minimis* departure.

In the instant case, the trial court denied JML at the close of plaintiff's case, agreeing to revisit the issue after the jury verdict. After the close of plaintiffs' case, the defense called five witnesses, and nearly five hours elapsed between the motion for JML and the close of the defendant's case. The Tamezes offered no rebuttal evidence after the close of the defendant's case. On

the whole, this case (like *McAnn*) does not present facts similar to the other cases in which we have found a *de minimis* exception to total compliance with Rule 50.

Nonetheless, we find that the failure in this case to make an actual motion at the close of the evidence was a technical, formalistic defect, not a substantive one. In the instant case, Misiaszek moved for JML at the close of plaintiffs' case. In denying the motion, the court explicitly stated that it would consider the immunity issues after the jury returned a verdict. Furthermore, although Misiaszek's lawyer did not actually make the Rule 50 motion at the close of all the evidence, he did make an explicit request for the court to consider JML after the verdict, and the court agreed to reconsider the legal issues after the verdict, without objection by plaintiffs. After a brief recess at the close of the defendant's case, the following colloquy took place:

> MR. NAVARRO [Counsel for Misiaszek]: Did I understand the Court correctly that you are going to hold the official and qualified immunity issues as law questions for the Court?
>
> THE COURT: Well, I will tell you what, frankly, I'm planning to do. And I don't want to dis-spirit [sic] Mr. Galbraith [Counsel for the Tamezes], but I have a hard time seeing where you've shown that the officer did anything that would show that he violated his qualified or official immunity.
>
> But, you know, we got to the point where we got in the case. And you had an expert, which I thought was—frankly, I mean, he did—for the case he had, I thought he did a pretty good job. I just—I don't think as the facts played themselves out, I didn't ever hear anyone come on and say that he did something that I think a reasonable police officer would not have done in his situation.
>
> But that's not a reason, I don't think, to not let it go before a jury. You've tried the case. You know, your people have invested their time in it.

And what I'm planning to do is let you go to the jury. And then we can figure out what to do after that comes back. So at least if you go up on appeal, we won't all have to do this again.

MR. NAVARRO: Well, the only reason I asked that is because there's still some language and questions on the immunity questions in the charge. And if I understood that, the Court was going to hold those as law questions, which is what I think they really are. I assumed—

THE COURT: I think they are, really, too. And, frankly—so what I'm going to do is let the case against the officer go forward. And that way you can get whatever verdict you get against the defendants—against the officer. And then we'll figure out what to do afterwards if I—

MR. NAVARRO: And we may not need to address that issue. And if we do, we will deal with it as a question of law.

THE COURT: Right.

Counsel for the plaintiffs did not object to this agreement.

It is clear from the record that the defense counsel brought the immunities issues to the court's and the plaintiffs' attention at the close of all evidence for the purpose of having the court decide the issues from the bench. Presumably, once the judge agreed to consider those questions as a matter of law after the verdict, plaintiffs' counsel could have objected or defense counsel could have made a formal motion for the record. But such a motion, in the context of the very specific conversation quoted above, would have been an academic exercise.

Although we would prefer full compliance with the letter of Rule 50, we find that the discussion at issue served the purposes of the rule and adequately informed the plaintiffs and the court that Misiaszek was raising immunity issues after the jury returned. At most, this case involves a failure to comply with the formalities of a 50(b) motion before the court. Therefore we find

that counsel's discussion of the issues with the judge, the judge's agreement to revisit the immunities issues after the verdict, and the plaintiffs' failure to object, serve the purposes of an actual Rule 50(b) motion. *See Greenwood v. Societe Francaise De,* 111 F.3d 1239, 1244-45 (5th Cir.1997) (holding that purposes of Rule 50 are satisfied when court and plaintiff are alerted to grounds on which defendant contends evidence is insufficient prior to submission of case to jury); *Villanueva v. McInnis,* 723 F.2d 414, 417 (5th Cir.1984) (same). Accordingly, we will not reverse the magistrate's post-verdict judgment for failure to make the motion at the close of the evidence.

### III

In addition to their challenge to the procedure by which the magistrate judge granted JML, plaintiffs claim that the court misconstrued federal and state immunities law in granting judgment.

The magistrate judge issued separate jury instructions for the Fourth Amendment search and for the use of force in the shooting. The jury held that Misiaszek did not use excessive force in shooting Tamez, but that the officer negligently caused Tamez's injuries and that his entry into the Tamez household itself was an actionable constitutional wrong. The court issued a judgment as a matter of law, trumping the jury's verdict on the federal Fourth Amendment claims because Misiaszek was entitled to qualified immunity. The court also mooted the jury's finding on a state negligence claim, holding that, under Texas law, Misiaszek was officially immune from suit. The existence of qualified immunity is a question of federal law, and we consider it only insofar as it

pertains to the federal Fourth Amendment claim for entry into the Tamez household. The official immunity issue is a matter of state law, which we consider separately.

We review *de novo* the magistrate judge's legal conclusions, whether regarding federal or state law, in entering judgment under Rule 50(b). *Pierce v. Texas Dep't of Criminal Justice, Institutional Div.,* 37 F.3d 1146, 1149 (5th Cir.1994), *cert. denied,* 514 U.S. 1107, 115 S.Ct. 1957, 131 L.Ed.2d 849 (1995). In reviewing the magistrate judge's decision, we consider all of the evidence in the light most favorable to the nonmoving party—here the Tamezes. *Fontenot v. Cormier,* 56 F.3d 669, 673 (5th Cir.1995). The magistrate judge's rulings on qualified immunity and official immunity are questions of law, which we review *de novo. Pierce,* 37 F.3d at 1149.

A

Under the federal doctrine of qualified immunity, law enforcement officers may not be held liable for civil damages, so long as they are performing a discretionary function that does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Because qualified immunity is an affirmative defense, the defendant must both plead and establish his entitlement to immunity. *Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); *Cronen v. Texas Dep't of Human Services,* 977 F.2d 934, 939 (5th Cir.1992).

At the outset, we briefly address Tamez's contention that

Misiaszek was not performing a discretionary duty when, responding to the shots fired call, Misiaszek decided to check in the house to see if anyone was injured. An official acts within his discretionary authority when he performs nonministerial acts within the boundaries of his official capacity. *Cronen,* 977 F.2d at 939. Misiaszek's actions here were not pursuant to specific orders, or spelled out in minute detail beforehand. His response required quick, but careful deliberation and the exercise of his judgment. In particular, the decision whether to enter Tamez's house required Misiaszek to balance the property rights and constitutional liberties of the homeowner against the interests of anyone who might be hurt inside, considerations of the safety of his fellow officers, and the exigencies of the moment. This decision clearly falls within the realm of discretionary decisions police officers commonly make. As such, Misiaszek satisfies the first requirement of the *Harlow* test for qualified immunity.

Whether Misiaszek's actions violate clearly established rights of which a reasonable person would have known, as Tamez contends, is a closer question. This requires us to decide whether the law on the night in question clearly established that the intrusion was an unreasonable search under the Fourth Amendment. First, we will examine the facts established at trial, viewed in the light most favorable to the Tamezes, and we will consider what Misiaszek knew on the night of the night in question. Then we will determine whether Misiaszek's actions violated Tamez's rights under the Fourth Amendment, as that law stood on that night. Finally, if we find that there was a violation of Tamez's rights as a matter of

law, we will consider whether a reasonable person would have known that Misiaszek's actions violated such a right. *See Dickerson v. McClellan,* 101 F.3d 1151, 1157-58 (6th Cir.1996) (setting out procedure for deciding qualified immunity in Fourth Amendment context).

1

Misiaszek's account of the events was different from Tamez's, but we consider the evidence in the light most favorable to Tamez. *Fontenot,* 56 F.3d at 673. Misiaszek did not have a warrant, but he knew that someone had reported shots fired at Tamez's house. Misiaszek recognized Marmolejo, the man who came out of the house, as a suspect in a burglary. Misiaszek knew that Marmolejo denied that any shots had been fired, although neighbors had reported hearing them. Misiaszek testified that, as the officers were questioning Marmolejo on the porch, Misiaszek heard noise coming from the house, such as a television or loud music.

There was conflicting evidence at trial regarding whether Marmolejo told officers that Tamez was in the house, and it is not clear which version of events is more favorable to the Tamezes. Marmolejo testified that he told Misiaszek that no one was in the house. Misiaszek testified that Marmolejo told him that Tamez was in this house. Because neither version of the facts is more favorable to the Tamezes, we will consider both as possibilities.

The parties agree that Misiaszek stood on the porch, announced himself as a police officer, opened the screen door, and looked to see if anyone was in the house. Tamez does not contest Culin's testimony that Misiaszek asked Tamez, "Are you all right, sir?"

Misiaszek claimed that he peered inside the door frame to see if anyone was inside, whereas Tamez apparently claimed that Misiaszek fully stepped into the house when he announced himself.[3]  Taking the evidence in the light most favorable to the Tamezes, we will assume that Misiaszek actually entered the house.

2

In view of the evidence as the Tamezes present it, we now consider whether Misiaszek's entry violated Tamez's rights under the Fourth Amendment.  This question is different from the average search and seizure case, because this is a civil suit and because it is before us in the context of a grant of JML on a qualified immunity question.

The Supreme Court has stated in *Siegert v. Gilley* that the first step in our inquiry must be whether the Tamezes' assertions state a Fourth Amendment claim at all.  500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991) ("A necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established' at the time the defendant acted is whether the plaintiff has asserted a violation of a constitutional right at all.").  The Fourth Amendment requires that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the

---

[3]Tamez did not testify because he died before the trial. For most of Tamez's side of the story, the court relied on his response to interrogatories taken pursuant to his separate conviction for attempted capital murder.  We discuss the use of interrogatory evidence in section IV of this opinion.

persons or things to be seized.

U.S. Const. amend. IV. Tamez asserted that Misiaszek's entry into his home was an unreasonable search under the Fourth Amendment, and it was well established at the time of this incident in 1991 that a warrantless search of a home may be unconstitutional under the Fourth Amendment. *See, e.g., Payton v. New York,* 445 U.S. 573, 587-89, 100 S.Ct. 1371, 1381-82, 63 L.Ed.2d 639 (1980); *Thomas v. Kippermann,* 846 F.2d 1009, 1011 (5th Cir.1988); *Carnejo-Molina v. INS,* 649 F.2d 1145, 1149 (5th Cir. Unit A 1981). Misiaszek contends that, to the extent that his entry into the house was a search under the Fourth Amendment, it was reasonable under the circumstances. Therefore, as an initial matter, we find that the Tamezes state a claim under the Fourth Amendment, the threshold showing that *Siegert* requires.

Next, deciding whether Misiaszek's conduct *actually violated* the Fourth Amendment turns on the following question: was Misiaszek's intrusion into Tamez's home unreasonable under the circumstances? *See Florida v. Jimeno,* 500 U.S. 248, 250, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991) ("The touchstone of the Fourth Amendment is reasonableness."). Misiaszek claims that the brief intrusion was justified by the need to make sure no one was injured by the gunshots that prompted the "shots fired" call. Therefore the narrow question before us is whether it is reasonable under the Fourth Amendment for a police officer, responding to a nighttime "shots fired" call, to step into the front door of a home without a warrant to ensure that no one inside has been hurt.

The text of the Fourth Amendment does not state conclusively

what kinds of searches are reasonable, but the Supreme Court has created two important presumptions in this area. First, the Court has held that police officers generally must conduct searches pursuant to probable cause and with a valid search warrant. *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). This is merely a presumption, however, and there are several exceptions to the probable cause and warrant requirements, including investigatory detentions, searches incident to a valid arrest, seizure of items in plain view, exigent circumstances, consent searches, vehicle searches, container searches, and searches in which the special needs of law enforcement make the probable cause requirement impracticable. *See generally* David Orlin, et al., *Warrantless Searches and Seizures,* 85 Geo. L.J. 847, 847 (1997) (collecting cases).

Second, the Court has held that warrantless entries into the home are presumptively unreasonable. *Payton v. New York,* 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). Again, however, this is merely a presumption; the Court has also held that exigent circumstances will justify warrantless searches or arrests. *See Minnesota v. Olson,* 495 U.S. 91, 100, 110 S.Ct. 1684, 1690, 109 L.Ed.2d 85 (1990); *Welsh v. Wisconsin,* 466 U.S. 740, 749-50, 104 S.Ct. 2091, 2097-98, 80 L.Ed.2d 732 (1984); *see also United States v. Richard,* 994 F.2d 244, 247 (5th Cir.1993). Therefore, a showing of exigent circumstances will rebut both presumptions. Under exigent circumstances, even a warrantless search does not violate the Fourth Amendment, so long as the scope of the search is no broader than necessary to deal with the

exigency. *Warden v. Hayden,* 387 U.S. 294, 299, 87 S.Ct. 1642, 1646, 18 L.Ed.2d 782 (1967); *United States v. Rico,* 51 F.3d 495, 500-01 (5th Cir.), *cert. denied,* --- U.S. ----, 116 S.Ct. 220, 133 L.Ed.2d 150 (1995).

The determination of whether exigent circumstances justified a warrantless search is a mixed question of law and fact. *United States v. Hudson,* 100 F.3d 1409, 1417 (9th Cir.1996); *Cf. Ornelas v. United States,* --- U.S. ----, ----, 116 S.Ct. 1657, 1661-62, 134 L.Ed.2d 911 (1996) (the existence of reasonable suspicion or probable cause are mixed questions of law and fact); *United States v. McConney,* 728 F.2d 1195, 1199-1205 & n. 4 (9th Cir.) (en banc) (probable cause and exigent circumstances implicate very similar standard of review concerns), *cert. denied,* 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

The question of whether exigent circumstances justified a warrantless search has two parts. First, as a factual matter, the jury (or judge in a bench trial) must sit as a finder of fact, deciding which facts (alleged to form the basis for the claim of exigency) are established by the evidence. *Cf. Ornelas,* --- U.S. at ----, 116 S.Ct. at 1661-62 (first step of probable cause inquiry involves determination of historical facts leading up to stop or search). We will reverse a jury's findings regarding the *existence* of facts only for clear error. *United States v. Howard,* 106 F.3d 70, 74 (5th Cir.1997). Second, the court must decide, as a matter of law, whether the facts that have been established, as a matter of law, create exigent circumstances sufficient to justify a warrantless search. This is a legal determination, which we review

*de novo.* *Hudson,* 100 F.3d at 1416; *United States v. Tibolt,* 72 F.3d 965, 969 (1st Cir.1995), *cert. denied,* --- U.S. ----, 116 S.Ct. 2554, 135 L.Ed.2d 1073 (1996); *United States v. Anderson,* 981 F.2d 1560, 1567 (10th Cir.1992) ("Although we accept underlying fact findings unless they are clearly erroneous, "the determination of whether those facts satisfy the legal test of exigency is subject to de novo review.' ") (quoting *United States v. Stewart,* 867 F.2d 581, 584 (10th Cir.1989)).

At trial, the jury explicitly found that exigent circumstances did not exist.  However, the court erroneously instructed the jury to answer both the factual question and the legal question.  The jury questionnaire read:

> Do you find from a preponderance of the evidence that there existed one or more exigent circumstances, as these have been defined to you in the jury instruction, *that otherwise justified the investigation of the "shots fired" call conducted by Defendant Misiaszek?*

(emphasis added).  Although the question of whether certain conditions were present is surely a question for the jury, the legal question of whether those circumstances justified Misiaszek's actions is a legal question that should have been determined by the court.

As we have stated, we review the jury's determinations of fact for clear error and the court's conclusions of law *de novo.*  It is not clear, in this case, whether the jury found that facts did not exist or whether it found that the circumstances did not, as a matter of law, justify Misiaszek's search.  It simply answered the

question above: "No."[4] However, in this case, the parties agree to most of the relevant facts. The family does not dispute that Felix Tamez fired a pistol in his back yard, that Misiaszek was responding to a "shots fired" call at night in a residential neighborhood, that the officers had not yet located the gun, that officers recognized Marmolejo as a suspect in another crime, or that Misiaszek stepped just into the house without a search warrant. The jury did not need to sit as a factfinder to determine whether these facts and circumstances existed, because the parties agree on virtually all relevant facts. Therefore, we will proceed to determine *de novo* whether the stipulated facts, in the light most favorable to the Tamezes, justified Misiaszek's brief, warrantless search. In making this determination, we are to

---

[4]In its jury instructions, the court defined exigent circumstances thus:

> The exigent circumstances exception to the Fourth Amendment warrant requirement will justify a warrantless search when that search is made for one or more of the following reasons:
>
> 1) to render emergency aid or assistance to persons reasonably believed to be in distress or need of assistance; and/or,
>
> 2) to prevent destruction of evidence or contraband; and/or,
>
> 3) to protect officers from other suspects or persons from whom they reasonably believe may be present, and if so, whom they reasonably believe may be armed and dangerous.
>
> In assessing whether any one or more of the foregoing exigencies applies, you must use an objective standard of reasonableness in assessing the conduct of the officer. That is, you must consider all the facts and circumstances that existed at the time that you find the warrantless "search" to have occurred.

consider the context and circumstances as they would appear to a reasonable and prudent police officer standing in Misiaszek's shoes. *United States v. Riley,* 968 F.2d 422, 425 (5th Cir.), *cert. denied,* 506 U.S. 990, 113 S.Ct. 507, 121 L.Ed.2d 442 (1992).

The Supreme Court has found as a matter of law that exigent circumstances will justify a warrantless search or seizure in many circumstances: when there is probable cause for the search or seizure and there is an imminent danger that someone will destroy evidence, *Cupp v. Murphy,* 412 U.S. 291, 294-96, 93 S.Ct. 2000, 2003-04, 36 L.Ed.2d 900 (1973), when the safety of law enforcement officers or the general public is threatened, *Hayden,* 387 U.S. at 298-99, 87 S.Ct. at 1645-46, or when a suspect is likely to flee before the officer can obtain a warrant, *Minnesota v. Olson,* 495 U.S. 91, 100, 110 S.Ct. 1684, 1689-90, 109 L.Ed.2d 85 (1990).

There is no evidence in the record that there was any threat of flight or the destruction of evidence. On the other hand, an officer in Misiaszek's position reasonably could have believed that the safety of the general public, or even the safety of the police officers, created exigent circumstances. At the date of the incident in 1991, the Supreme Court had already established the exigent circumstances exception to the warrant requirement of the Fourth Amendment. *See, e.g., Hayden,* 387 U.S. at 298-99, 87 S.Ct. at 1645-46. However, few cases decided before that date considered whether similar circumstances are exigent enough to justify a warrantless search.[5]

---

[5]Several cases decided since 1991 have presented almost identical circumstances. *See, e.g., Dickerson v. McClellan,* 101 F.3d 1151, 1160 (6th Cir.1996) ("shots fired" call justified

In *Hayden,* the Supreme Court held that police officers were justified in conducting a warrantless search of a house to which the victims of an armed robbery had chased the robber. *Id.* at 297, 87 S.Ct. at 1645. Inside defendant Hayden's house, police found a pistol, shotgun, and ammunition, as well as clothes that matched the description of the robber; all were admitted into evidence against Hayden at trial. *Id.* In a petition for habeas corpus, Hayden claimed that the evidence should have been excluded at trial as the fruits of a warrantless search illegal under the Fourth Amendment. The Court held that the search was not unconstitutional because the presence of weapons on the scene and the potential for violence created an exigency necessitating quick action:

> The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger the lives of others. Speed here was essential, and only a thorough search of the house for persons and weapons could have insured that Hayden was the only man present and that the police had control of all weapons which could be used against them or to effect an escape.

*Id.* at 298-99, 87 S.Ct. at 1646.

In the Fifth Circuit, we have not decided many cases closely on point. However in our cases preceding the night of the search in this case, we have held more generally that the presence of an armed suspect who poses an immediate threat to citizens can justify

---

warrantless protective sweep). However, in considering whether the search violated a clearly established right, we consider only the law as established when the official acted, not at the time the case is decided. *See, e.g., United States v. Lanier,* --- U.S. ----, ----, 117 S.Ct. 1219, 1227, 137 L.Ed.2d 432 (1995) ("a general constitutional rule *already identified* in the decisional law may apply with obvious clarity to the specific conduct in question, even though "the very action in question has [not] previously been held unlawful,' ") (quoting *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039).

warrantless searches.  In *United States v. Jackson,* police officers arrested two men, as they were leaving a hotel room, for selling cocaine.  700 F.2d 181, 184 (5th Cir.), *cert. denied sub nom., Hicks v. United States,* 464 U.S. 842, 104 S.Ct. 139, 78 L.Ed.2d 132 (1983).  Although the officers had been told that the suspects were armed, they did not find a gun during a patdown incident to the arrest.  *Id.* We held that exigent circumstances permitted police to search a motel room even after the arrest of two suspects, because the officers suspected that the arrestees were not acting alone, and the officers had reason to believe that other suspects had a gun in one of the motel rooms.  *Id.* at 190.

In *McGeehan v. Wainwright,* we held that exigent circumstances justified a warrantless police search of a trailer after four bank robbery suspects exited it.  526 F.2d 397, 399 (5th Cir.1976), *cert. denied,* 425 U.S. 997, 96 S.Ct. 2214, 48 L.Ed.2d 823 (1975).  In that case, as in this one, police knew that a weapon had been used about an hour earlier, and none of the suspects who exited the trailer carried the weapon.  *Id.* We held that the police could reasonably suspect that "additional confederates might be concealed inside the darkened trailer with the missing shotgun," thus justifying a warrantless protective sweep of the trailer.  *Id.*

Cases from other circuits have established that the firing of a weapon in a residential neighborhood at night creates exigent circumstances.  In *United States v. Arcobasso,* a case similar to ours, the Eighth Circuit found that a "shots fired" call created circumstances exigent enough to justify a warrantless search of a house.  882 F.2d 1304 (8th Cir.1989).  In that case, police

officers responded to a nighttime call indicating that shots had been fired in defendant Arcobasso's residence. *Id.* at 1305. When they arrived, the officers heard the clicking sound of a pistol being "dry fired," or the sound of the trigger being pulled on an unloaded weapon. When Arcobasso saw the officers, he fled through an open window and tried to escape. The officers stopped him, patted him down for weapons, and found none. *Id.*

When police asked Arcobasso if anyone else was in the house, Arcobasso responded only, "Rick." Believing that there may be a gunshot victim inside, the officers entered Arcobasso's house without consent and without a warrant, where they seized a loaded shotgun in plain view, a revolver, spent and live ammunition, and one Rick Gaines. *Id.* The Eighth Circuit held that the officers could reasonably believe from the "shots fired" call that a person in the house may have required immediate assistance, or that "Rick" might have posed a danger to the officers' safety. *Id.* at 1307. The court therefore held that the items seized were admissible. *Id.*

The officers on Tamez's front porch were responding to a "shots fired" call, which, if accurate, necessarily involved a firearm of some sort. The officers recognized Marmolejo as the target of a separate criminal investigation, and they knew he did not own the house. They could hear noise in the house, but could not determine, without at least breaking the threshold of the doorway, whether anyone was inside. The officers had not yet located the gun used to fire the reported shots, nor had they conclusively determined that there were no shooting victims or

hostages in the house. Under these circumstances, Misiaszek could reasonably have harbored concern for the lives of innocent people, including Tamez himself, or for the lives of Misiaszek's fellow officers. Therefore, under the cases cited, we find that the undisputed circumstances of the instant case were sufficiently exigent as a matter of law to justify Misiaszek's brief, warrantless entry into the house.

The Tamezes further claim that, to the extent any exigent circumstances existed, those circumstances were created by Misiaszek and the other police officers. We have held that the government may not justify a warrantless search with exigent circumstances of its own making. *United States v. Thompson,* 700 F.2d 944, 950 (5th Cir.1983). However, the threat that someone has been shot or is being held against their will inherent in a "shots fired" call were not created by the San Marcos Police, but by Tamez's discharge of a firearm in a residential neighborhood. The Tamezes' claim that the officers caused the exigent circumstances is without merit.

To summarize our Fourth Amendment analysis: The question of whether exigent circumstances justify a warrantless search is a mixed question of law and fact. Most of the facts in this case are not in dispute. As a matter of law, we hold that the exigent circumstances in this limited case justified the brief, warrantless intrusion into Tamez's home, and we find that Misiaszek did not violate Tamez's Fourth Amendment rights. This holding is sufficient to end our inquiry. If the Misiaszek did not violate Tamez's Fourth Amendment rights by opening the screen door and

stepping inside the house, Misiaszek is not only protected by qualified immunity, but there is also no violation of constitutional rights to form the basis of a section 1983 claim in the first instance. The magistrate judge did not err in granting JML on qualified immunity grounds.

B

The court also granted JML on the Tamezes' state law negligence claims, holding that they are barred by the Texas doctrine of official immunity. Under Texas law, "[g]overnment employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994).

As we decided above, Misiaszek was clearly performing a discretionary duty when, responding to the shots fired call, he decided to check in the house to see if anyone was injured. Under Texas law, if an action involves personal deliberation, decision, and judgment, it is discretionary. *Id.* at 654. Actions that require obedience to orders or the performance of a duty to which the actor has no choice are ministerial. *Id.* Our conclusion is therefore no different in the state law context: Misiaszek's actions clearly involved judgment and discretion, not ministerial following of orders.

The "good faith" inquiry is not well defined in Texas law of official immunity. *See Travis v. City of Mesquite,* 830 S.W.2d 94, 103 (Tex.1992) (Cornyn, J., concurring). The Texas Supreme Court

recently applied the following formulation of good faith in a case involving a high-speed chase on an interstate highway:

> We hold that an officer acts in good faith in a pursuit case if: a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit.

*Chambers,* 883 S.W.2d at 656. The court went on to hold that, "To controvert the officer's summary judgment proof on good faith, the plaintiff must ... show that "no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts.' " *Id.* at 657. There is no Texas case on point establishing what would establish good faith in the context of a brief, warrantless intrusion into a home. By analogy, we find that, under Texas law, an officer would show good faith if a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately enter the home outweighed a homeowner's rights under the Constitution. *See Farm Credit Bank of Texas v. Guidry,* 110 F.3d 1147, 1149 (5th Cir.1997) (when state law is silent, court must make "Erie guess" as to how state supreme court would rule). The Texas Supreme Court has given us additional guidance, holding that the objective test for "good faith" was derived substantially from the standard for qualified immunity, which we discussed above. *Chambers,* 883 S.W.2d at 656.

As we have already discussed in the Fourth Amendment context, we find that Misiaszek's actions on the night in question were objectively reasonable. A reasonable police officer in the same situation could have believed that the exigencies of the moment

called for a warrantless, minor intrusion into Tamez's house. Therefore we find as a matter of law that Misiaszek was acting in good faith, as defined by Texas law.

Finally, we consider whether Misiaszek was acting within the scope of his authority. An officer acts within the scope of his authority if he discharges the duties generally assigned to him. *Id.* at 658. Misiaszek has conclusively shown that he was on the job, investigating a "shots fired" call, fulfilling the duties of his office. There is no question that he was acting within the scope of his authority. Therefore, we find that Misiaszek has proven all that he must in order to make a showing of official immunity. We agree with the magistrate that Misiaszek was officially immune from the Tamezes' state negligence claims as a matter of law.

IV

The Tamezes also challenge the magistrate judge's decision at trial to allow Misiaszek and the City to use Felix Tamez's sworn answers to interrogatories from his separate but related charge of attempted capital murder. We hold that it was not reversible error for the court to admit the statements into evidence. Felix Tamez was, of course, not available to testify at trial; only Tamez and defendant Misiaszek witnessed the sequence of events in the house. The Tamezes originally moved the court to allow the interrogatories into evidence to detail Tamez's account of events. The court granted plaintiffs' motion and simultaneously held that, if plaintiffs could introduce testimony from the interrogatories, the defendants could as well. The magistrate judge held that the

interrogatory response had special indicia of reliability and that the special circumstance of Tamez's death before trial warranted the admission of the interrogatory answers.  The Tamezes did not object to the court's decision to allow Misiaszek and the City to use Tamez's interrogatory responses.

District courts are given broad discretion in rulings on the admissibility of evidence.  *Rock v. Huffco Gas & Oil Co.,* 922 F.2d 272, 277 (5th Cir.1991).  We will reverse the court's evidentiary rulings only when the court has clearly abused its discretion and a substantial right of a party is affected.  *Id.;  see also* Fed.R.Evid. 103(a).

As an initial matter, we seriously question the use of sworn responses to interrogatories as direct evidence at trial, because such responses are not subject to cross-examination.  The Federal Rules of Evidence explicitly discourage the admission of such direct testimony by an out of court statement not subject to cross examination.  The Rules allow into evidence:

> Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, *if the party against whom the testimony is now offered, or in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.*

Fed.R.Evid. 804(b)(1) (emphasis added).

However, the Tamezes were the party that asked the court to allow the use of the interrogatories at trial.  They can hardly contend now that they were prejudiced by the defendants' introduction of the interrogatory responses into evidence.  Similarly, the Tamezes cannot complain that Tamez was prejudiced by

the introduction of evidence from a criminal proceeding against him. The Tamezes' lawyer, in his opening statement, raised the fact that the state had charged Tamez with attempted capital murder in the incident, as well as the fact that Tamez pleaded *nolo contendere.* Furthermore, the Tamezes did not object in a timely fashion to the district court's decision to allow Misiaszek and the City to use the interrogatory responses. Finally, although the court did not characterize it as such, Tamez's responses to the interrogatory would have been admissible at trial as admissions of a party opponent under Fed.R.Evid. 801(d)(2)(A) and (B). Therefore we find that the court did not abuse its discretion in admitting the interrogatory testimony.[6]

V

Therefore we AFFIRM the magistrate judge's grant of JML holding that Misiaszek is immune from suit under federal and state law, AFFIRM the JML in favor of the City of San Marcos, and AFFIRM the dismissal of plaintiffs' claims.

---

[6]The family also challenges the magistrate judge's entry of judgment as a matter of law for the City of San Marcos. After a careful review of the law and the record in this case, we find that the magistrate judge did not err, and we affirm based on the magistrate judge's reasoning.