# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 98-2410

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff-Appellee, | * |
| | * |
| v. | * |
| | * Appeal from the United States |
| Frederick Cooper, | * District Court for the Eastern |
| | * District of Arkansas. |
| Defendant-Appellant. | * |
| | * |
| | * |

_____

Submitted: January 14, 1999
Filed: February 4, 1999

_____

Before BOWMAN, Chief Judge, MURPHY, Circuit Judge, and VIETOR,* District
Judge.

_____

MURPHY, Circuit Judge.

Frederick Cooper was convicted by a jury of conspiracy to possess with intent
to distribute and to distribute cocaine base (crack cocaine), distribution of cocaine
base, possession with intent to distribute cocaine base, possession with intent to
distribute cocaine hydrochloride, and possession with intent to distribute marijuana

---

*The Honorable Harold D. Vietor, United States District Judge for the
Southern District of Iowa, sitting by designation.

in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1) and 846. The district court[1] sentenced him to life imprisonment. He claims on appeal that the denial of his motion to suppress evidence seized pursuant to a search warrant violated his Fourth Amendment rights and that he is entitled to resentencing because of a three level sentencing enhancement for his role in the offenses. We affirm.

Frederick Cooper was suspected by police of dealing drugs from a residence at 2420 Moss Street in North Little Rock, where he was believed to live with Michael Butler. A man named Darryl Jones had been cooperating with the police after returning to Arkansas to face drug charges. He had had prior dealings with Cooper, and he went to the Moss Street residence to purchase cocaine from Cooper in the early morning hours of May 1, 1996. Jones was acting in his role as a confidential informant and had been wired with a body mike. The conversations Jones had at the scene were monitored by law enforcement officials who also kept him under surveillance as he approached the house. When there was no answer, he called Cooper's pager from a pay phone. Cooper returned the call and instructed Jones to knock on a back window so that Michael Butler could let him into the house. A few minutes later Cooper returned to the residence, and Jones purchased one half ounce of crack from him. Jones saw Cooper retrieve the crack from a sock in the bedroom, where he also observed a .45 caliber weapon on the dresser. Before leaving, Jones borrowed a scale from Cooper and broke the half ounce into two quarters, and Cooper handed him a trash bag and instructed him to dump it far away. The trash bag was later found to contain a wrapper in the shape of a kilo of cocaine, with cocaine residue on it, and bearing the words Medellin, Colombia. Cooper's latent fingerprint was found on another plastic bag on which cocaine appeared to have been cut.

Based on this information, a search warrant was obtained the same day for

---

[1]The Honorable Susan Webber Wright, Chief United States District Judge for the Eastern District of Arkansas.

Cooper's residence. The warrant provided that "due to information contained in the affidavit and the occurrence of circumstances that are difficult to predict . . . speedy access into the residence is justified and this warrant shall be executed at any time of day or night." That afternoon, surveillance officers saw Cooper leave the residence in an automobile. They stopped him shortly thereafter, told him about the warrant, and asked for a key to the house. Cooper maintained that he did not have a key. The officers executed the search warrant and entered Cooper's house within ten minutes after he was stopped. The house had an iron security door on the front door and steel bars on all windows. Without knocking, the officers proceeded to pull the front door from its hinges with a wrecker. They entered the house with weapons drawn and discharged a grenade-type distraction device. No one was inside at the time. The subsequent search uncovered weapons, cocaine base, cocaine hydrochloride, marijuana, and drug paraphernalia, including scales and a glass beaker.

Cooper was arrested and later indicted. Cooper's motion to suppress evidence obtained in the search of his residence was denied, and a jury found Cooper guilty on all five counts. At sentencing, the court imposed a three level enhancement based on Cooper's role in the offense and a two level enhancement for possession of a weapon, bringing his base offense level to 43. He was sentenced to life imprisonment.

Cooper asserts the district court erred in denying his motion to suppress because his Fourth Amendment rights were violated by the officers' failure to knock and announce their presence. The district court's findings of fact are reviewed for clear error giving "'due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" United States v. Ball, 90 F.3d 260, 262 (8th Cir. 1996) (quoting Ornelas v. United States, 116 S.Ct. 1657, 1663 (1996)). A de novo standard of review is applied to the ultimate determination of whether the facts constitute exigent circumstances sufficient to make a no knock entry reasonable under the Fourth Amendment. Id.

The common law requirement that officers must knock and announce their presence before entering is part of the Fourth Amendment reasonableness inquiry. Wilson v. Arkansas, 514 U.S. 927 (1995). The common law has found no knock entries reasonable "in situations involving threats of physical violence, prisoner escapes, and likely destruction of evidence." United States v. Murphy, 69 F.3d 237, 243 (8th Cir. 1995). The proper inquiry is whether given the facts and circumstances known to the officers, they "reasonably decide[d] there [was] an urgent need to force entry." United States v. Lucht, 18 F.3d 541, 543 (8th Cir. 1994).

Little Rock police officer Todd Spafford testified at the hearing on the motion to suppress that a SWAT team had been called in to execute the warrant because officers believed the entry would involve high risk to those serving the warrant. They knew the house likely contained weapons, that it was barricaded, and that Cooper had a violent criminal history. The police executing the warrant were aware that Cooper was outside the house, but they did not know the whereabouts of Michael Butler, the other person believed to be living there. They possessed a valid search warrant, and the court issuing the warrant had determined that the officers would be justified in approaching speedily and under cover of darkness. Under these circumstances, it was not unreasonable to believe there was an urgent need to force entry. The entry and search did not violate the Fourth Amendment.

Cooper also contests the imposition of a three level enhancement for a supervisory or managerial role. He argues there was insufficient evidence to support the district court's factual finding regarding his role and seeks a remand for resentencing. U.S. Sentencing Guidelines Manual § 3B1.1(b) [U.S.S.G.] provides for an enhancement of three levels "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." An application note to the guideline sets out factors for a court to consider in respect to a possible enhancement: the defendant's decision-making authority, recruitment of accomplices, claim to fruits of the crime,

organizational role, and control over others.  U.S.S.G. § 3B1.1, comment (n.4).

The district court's finding that Cooper had control over one or more other participants in a conspiracy involving five or more people can be reversed only if it is clearly erroneous.  United States v. Brown, 156 F.3d 813, 817 (8th Cir. 1998).  At sentencing, the government sought a four level enhancement pursuant to U.S.S.G. § 3B1.1(a).  The district court only granted an upward adjustment of three, however, because it found that one of Cooper's suppliers, government witness Harold Barbee, was a "bigger" dealer.  Cooper asserts that the enhancement was not justified because he says the only evidence to support it was that he fronted drugs to others.  While defendant's status as a distributor, standing alone, would not warrant an enhancement under § 3B1.1, United States v. Bryson, 110 F.3d 575, 584 (8th Cir. 1997), there was sufficient additional evidence to support the court's finding.  The government presented evidence that Darryl Jones, Terrence Smith, Eric Wright, Michael Butler, and Timothy Larone Curry were involved in the drug conspiracy with Cooper and that he specifically gave instructions to Jones, Butler, and Smith regarding transporting, purchasing, and/or selling controlled substances.  He also ordered Jones to tell the authorities that he owned the drugs seized in a January 1996 search of another house.  On this record, the court did not clearly err in finding that Cooper qualified for a three level enhancement under § 3B1.1.

Since Cooper has not established a constitutional violation or shown that the enhancement for his role in the offenses was clearly erroneous, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.