# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 04-3624

_____

United States of America,  

      Appellee,  

v.  

Russell J. Frauendorfer,  

      Appellant.  

\*  
\*  
\*  
\*   Appeal from the United States  
\*   District Court for the  
\*   District of Nebraska.  
\*  
\*  
\*  

_____

Submitted:  September 15, 2005
Filed:  November 14, 2005

_____

Before RILEY, HEANEY, and COLLOTON, Circuit Judges.

_____

RILEY, Circuit Judge.

Russell Frauendorfer (Frauendorfer) appeals his convictions after a jury found him guilty of conspiring to commit armed bank robbery (Count One), committing an armed bank robbery (Count Two), and using a firearm in connection with the bank robbery (Count Three).  The district court[1] sentenced Frauendorfer to concurrent sentences of 48 months' imprisonment on both Counts One and Two, and 84 months'

_____

[1]The Honorable Joseph F. Bataillon, Chief Judge, United States District Court for the District of Nebraska.

imprisonment on Count Three, to be served consecutively. On appeal, Frauendorfer challenges the sufficiency of the evidence used to convict him. We affirm.

## I.    BACKGROUND

On May 30, 2003, a witness across the street from the Bank of Leigh in Creston, Nebraska, saw two men "sneaking along the edge of the bank, ducking down beneath each window as they went along the sidewalk," and then watched as the men "rapidly entered the bank." The men wore masks, hoods, and dark clothing. One man carried a silver handgun, and the other carried a "dark-colored" gun. Upon entering the bank, the men pointed their guns at the tellers, told the tellers to get on the floor, and stole $4,217 in cash from the bank. The stolen money contained bait bills, and copies were given to law enforcement. After the robbery, a witness saw a dust-covered Blazer speed away from the Bank of Leigh. Another witness observed a mud-covered Blazer or GMC Jimmy, with splashes of red visible through the mud, drive away from the scene of the robbery.

On June 18, 2003, Aaron Shanle (Shanle) and another young man entered the Columbus Tour & Travel Agency in Columbus, Nebraska. Shanle used cash to purchase a one-way airline ticket to Helsinki, Finland. Finding Shanle's purchase suspicious, employees of the travel agency contacted law enforcement. After learning Shanle used bait bills from the Bank of Leigh robbery to purchase the airline ticket, law enforcement issued an arrest warrant for Shanle. Shanle and Frauendorfer were close friends, and Shanle is Frauendorfer's nephew.

On June 21, 2003, a lone gunman wearing a mask, gloves, and dark-colored clothing entered the Platte Center Bank in Platte Center, Nebraska. The man stole approximately $5,255 in cash. A bank employee saw the robber leave the bank, and shortly thereafter, he saw a white sport utility vehicle drive away. Another witness spotted a white Blazer speeding away from the scene of the robbery. Witnesses could

not tell how many people were inside the vehicle, because the windows of the Blazer were darkly tinted.

On June 25, 2003, during the course of the investigation to determine Shanle's whereabouts, law enforcement interviewed Frauendorfer. Frauendorfer told officers he was in Lincoln, Nebraska, on the day of the robbery, and he did not believe Shanle would be involved in a bank robbery.

After avoiding arrest for approximately two months, Shanle turned himself in to law enforcement. During a proffer interview with law enforcement, Shanle stated he committed the bank robberies with Frauendorfer.

On February 17, 2004, officers arrested Frauendorfer pursuant to a federal arrest warrant. Frauendorfer was indicted on five counts: (1) conspiring to commit armed bank robbery; (2) robbing the Bank of Leigh in Creston, Nebraska; (3) using a firearm in connection with the Bank of Leigh robbery; (4) robbing the Platte Center Bank in Platte Center, Nebraska; and (5) using a firearm in connection with the Platte Center Bank robbery.

At trial, Shanle testified against Frauendorfer. In exchange for implicating Frauendorfer in both robberies, Shanle hoped for a reduced sentence. Shanle testified to the following: (1) Frauendorfer went into the bank during the first robbery, and Frauendorfer drove the getaway vehicle after the second robbery; (2) Frauendorfer drove Frauendorfer's GMC Jimmy in the first robbery, and Frauendorfer drove Shanle's white Blazer in the second robbery; (3) before the first robbery, Shanle and Frauendorfer applied red contact paper and mud to Frauendorfer's GMC Jimmy to make it appear red; (4) during the first robbery, Shanle carried a Remington Rand 1911 handgun, and Frauendorfer carried a Glock .40 handgun purchased from Frauendorfer's brother-in-law for Shanle's use; (5) while Shanle was a fugitive, Frauendorfer gave Shanle his birth certificate and social security number so Shanle

could apply for a passport and purchase an airline ticket to Ireland using Frauendorfer's name; (6) Frauendorfer accompanied Shanle to the travel agency to purchase the airline ticket to Helsinki; (7) Shanle was interested in traveling to Finland to see a foreign exchange student he dated in high school and whom Shanle believed lived near Helsinki; (8) within hours of the second robbery, Frauendorfer drove Shanle to Phoenix, Arizona, and left him with some friends; (9) while Shanle was a fugitive from justice, Frauendorfer helped Shanle move locations while he made brief visits to Nebraska; and (10) shortly before Shanle surrendered, Shanle and Frauendorfer spent Labor Day weekend at a Mexican resort town.

During trial, one of Frauendorfer's friends in Phoenix testified he saw a Glock handgun retrieved from, and later returned to, Frauendorfer's car. Additionally, Blake Greisen (Greisen) testified Shanle and Frauendorfer retrieved red contact paper from Greisen's home shortly before the first robbery.

The jury heard recorded phone calls between Shanle and Frauendorfer made during Shanle's detention at the Pottawattamie County Jail in Council Bluffs, Iowa. During these conversations, Shanle and Frauendorfer discussed escape plans, the disposition of the Glock handgun used in the robberies, and the pressure on Shanle to disclose his co-conspirator.

Frauendorfer testified in his own defense. Frauendorfer admitted he (1) lied when he told law enforcement he was in Lincoln on the day of the first robbery; (2) accompanied Shanle to the travel agency when Shanle used bait bills to purchase the airline ticket to Helsinki; (3) owned a GMC Jimmy; (4) drove Shanle to Phoenix and left Shanle with friends; and (5) spent Labor Day weekend with Shanle in Mexico. Frauendorfer explained he only drove Shanle to Phoenix to help Shanle avoid his probation officer after being caught with an AK-47 and beer. Frauendorfer denied committing the bank robberies and denied temporary ownership of the Glock handgun, even though he was recorded telling Shanle he had sold the gun.

-4-

Frauendorfer testified Shanle denied his own involvement in any bank robberies, and after turning himself in, Shanle became desperate and demanding, asking Frauendorfer for help in escaping, eliciting witnesses, and creating favorable evidence.

Following a five-day trial, the jury found Frauendorfer guilty of conspiring to commit armed bank robbery (Count One), robbing the Bank of Leigh in Creston, Nebraska (Count Two), and using a firearm in connection with the Bank of Leigh robbery (Count Three). The jury found Frauendorfer not guilty of robbing the Platte Center Bank in Platte Center, Nebraska (Count Four), and using a firearm in connection with the Platte Center Bank robbery (Count Five). Frauendorfer filed a motion for judgment of acquittal or for new trial, which the district court denied. Frauendorfer appeals.

## II.    DISCUSSION

Frauendorfer contends the government presented insufficient evidence to support the jury's verdicts. In particular, Frauendorfer argues the jury did not reach reasonable conclusions and Shanle's testimony was not credible.

The standard of review concerning sufficiency of the evidence is strict. United States v. Dabney, 367 F.3d 1040, 1042 (8th Cir. 2004). We review "the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." United States v. Sanders, 341 F.3d 809, 815 (8th Cir. 2003) (citation omitted). We reverse only if no reasonable jury could have found Frauendorfer guilty beyond a reasonable doubt. Dabney, 367 F.3d at 1042.

We conclude the facts and inferences, when taken together, allowed the jury to reach the reasonable conclusion Frauendorfer was guilty. Shanle identified Frauendorfer as his accomplice in the first robbery. Shanle also testified that while

he was a fugitive from justice, Frauendorfer drove him to Phoenix and helped Shanle move from location to location while he made brief visits to Nebraska. Shanle's testimony, by itself, is sufficient to support Frauendorfer's convictions. See United States v. Marshall, 922 F.2d 479 (8th Cir. 1990) (holding the testimony of a single witness, even if the witness is a co-defendant testifying pursuant to a plea agreement, is sufficient to support a guilty verdict).

Other evidence presented to the jury corroborating Shanle's testimony supports the reasonableness of the jury's verdict. A witness reported seeing a sport utility vehicle covered in mud with red visible through the mud leaving the scene of the first robbery, and Greisen testified Shanle and Frauendorfer retrieved red contact paper from Greisen's home shortly before the first robbery. The jury also heard recorded conversations between Shanle and Frauendorfer in which they discussed escape plans and the disposition of the Glock handgun.

Frauendorfer's own admissions at trial further corroborated Shanle's testimony. Frauendorfer admitted owning a GMC Jimmy, and he admitted assisting Shanle after the second robbery. Frauendorfer testified he accompanied Shanle to the travel agency to purchase the one-way ticket to Helsinki. Frauendorfer also admitted he drove Shanle to Phoenix, and left Shanle with friends. In sum, we conclude the evidence amply supports the jury's verdict.

## III. CONCLUSION

For the foregoing reasons, we affirm Frauendorfer's convictions.

_____