# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1744

_____

United States of America,

        Appellee,

v.

Cameron Maurice Stevens,

        Appellant.

\*   Appeal from the United States
\*   District Court for the District
\*   of Minnesota.

_____

Submitted:  October 11, 2005
Filed:  March 16, 2006

_____

Before BYE, BEAM, and SMITH, Circuit Judges.

_____

BEAM, Circuit Judge.

Cameron Stevens appeals the district court's[1] denial of his motion to suppress, as well as his conviction for possession of crack cocaine with intent to deliver and possession of a firearm.  We affirm.

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, adopting the Report and Recommendation of United States Magistrate Judge Arthur J. Boylan.

## I. BACKGROUND

We recite the facts in the light most favorable to the jury's verdict. United States v. Selwyn, 398 F.3d 1064, 1065 (8th Cir. 2005). Police obtained a search warrant for Larry Boyd's residence, and because they believed drugs and weapons were present, asked for and obtained a "no-knock nighttime" warrant. While police were watching the house before executing the warrant, they saw Stevens and another man enter Boyd's home. Stevens used a key to unlock the front door. Officers executed the warrant shortly thereafter at around 6:30 p.m. on February 9, 2004, and found crack cocaine and two weapons in the residence.

Stevens was charged with possession of crack cocaine with intent to distribute and possession of a firearm in furtherance of a drug offense. At the hearing on the motion to suppress, Officer Radke, the police officer in charge of the investigation and the affiant on the search warrant, testified. Radke stated that a confidential informant (CI), who had given reliable information over 100 times in the months leading up to the search, told Radke that he had personally observed both drugs and guns in Boyd's residence in the past seventy-two hours. Radke testified that when he got this information, he immediately began to prepare the search warrant.

Radke testified that he had been doing surveillance on Boyd's house and had observed a "moderate" amount of foot traffic. Radke asked for a "no-knock nighttime" search because the CI had told him there were guns in the residence–including a sawed-off shotgun, and Radke had noticed during surveillance that drug trafficking at Boyd's house took place during the late night hours.

At the time of the hearing, Radke had been a peace officer for seven years, and had been working narcotics for about seven months. He had executed "dozens" of search warrants during that time, and about half of those were "high risk"–involving

some risk of danger due to weapons, the amount of drugs present, or the violent propensities of an occupant of a searched home.

The affidavit attached to the search warrant explained Officer Radke's experience, and stated that the CI had contacted him with the pertinent information about the drugs and guns; that the CI had given reliable information in numerous other cases; and finally, that the CI reported a sawed-off shot gun was in a common area of the residence. Further the affidavit related that Officer Radke had conducted the aforementioned surveillance on Boyd's residence and noted activity consistent with drug trafficking.

Before trial, Stevens sought to suppress evidence found during the search, arguing that the search warrant was not supported by probable cause, and that a no-knock entry was unjustified. The magistrate judge denied the motion to suppress, finding that the affidavit established probable cause under the totality of the circumstances, because: the affidavit created an inference that the CI reported that within the previous seventy-two hours he had observed a large quantity of drugs and a sawed-off shotgun at the residence; the affidavit's attestation of the CI's reliability; and the officer's corroboration of the CI report with surveillance. The magistrate judge further found that the no-knock entry was justified based on the credible report of the sawed-off shotgun located in a common area of the residence, despite the absence of an explicit statement in the affidavit concerning officer safety. The magistrate judge found that such concerns were implicit in the mere assertion that there was a sawed-off shotgun easily accessed in the place to be searched.

At trial, the evidence showed that on February 9, 2004, officers observed Stevens and the other man enter the apartment. Shortly thereafter, two other men

arrived separately. Officers for the Emergency Response Unit (ERU)[2] approached Boyd's residence at around 6:30 p.m. One of the officers saw an occupant look toward him out of the window and then quickly back away from the window. The officers then threw a "flash bang" device through the window, and a few minutes later, officers broke down the door and secured the apartment. Upon entering, the officers immediately noticed a sawed-off shotgun located close to the door, which they later discovered was loaded. The ERU officers secured the four occupants in the residence by handcuffing them in the kitchen, and the narcotics unit searched the residence for drugs. Officers recovered 279.98 grams of crack cocaine, packaged in numerous small baggies that were located in a larger bag. The larger bag was located in the northwest bedroom and had Stevens' fingerprints on it. Also in the northwest bedroom were papers pertaining to Stevens, as well as clothing and shoes that matched Stevens' size and the brand he was wearing on the day of the arrest. An empty box of 12-gauge ammunition was located in this same bedroom, and under the bed officers found a gun cleaning kit for a .40 caliber handgun.[3]

Stevens was convicted on both the drug and weapons counts and was sentenced to 271 months' imprisonment. On appeal, he challenges the district court's determination that there was probable cause for the search warrant and that there were adequate grounds for a "no-knock nighttime" search. He also asserts there was insufficient evidence to support his conviction on both counts.

---

[2]The ERU performs the initial entry into a location when the search is deemed to be "high risk." The search of Boyd's residence was considered high risk because of the presence of the sawed-off shotgun.

[3]Stevens stipulated to the fact that he had purchased and/or possessed two .40 caliber handguns in 2003.

## II.    DISCUSSION

In reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo. United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005). In addition to viewing the evidence in the light most favorable to the verdict, in reviewing the sufficiency of the evidence, we resolve evidentiary conflicts in favor of the government and accept all reasonable inferences drawn from evidence that support the jury's verdict. United States v. Frauendorfer, 428 F.3d 1115, 1118 (8th Cir. 2005). We will reverse Stevens' conviction on the basis of insufficient evidence only if no reasonable jury could have found him guilty beyond a reasonable doubt. Id.

### A.    Motion to Suppress

In reviewing whether there was probable cause to support issuance of the search warrant, "[o]ur role is to ensure that the evidence as a whole provides a substantial basis for finding probable cause to support the issuance of the search warrant." United States v. Terry, 305 F.3d 818, 822 (8th Cir. 2002). We must determine whether the application and affidavit established a "fair probability" that contraband or similar evidence would be found at the targeted location. Illinois v. Gates, 462 U.S. 213, 238 (1983). We afford great deference to a judicial officer's decision that an affidavit establishes probable cause for a warrant. United States v. Leon, 468 U.S. 897, 914 (1984).

Officer Radke testified that the judge who issued the search warrant relied solely upon the warrant application and affidavit when making the probable cause determination. Thus, we confine our probable cause review to the four corners of those documents. Solomon, 432 F.3d at 827. Further, "[w]hen the affidavit is based on information from an informant, the informant's reliability, veracity, and basis of

knowledge are relevant to whether the affidavit provided probable cause to support the search." Id.

We have no difficulty concluding that probable cause supported the issuance of the search warrant in this case. The CI had given reliable information on numerous prior occasions, and Officer Radke's surveillance confirmed activity consistent with drug trafficking. Stevens complains that there were no dates or time frames in the affidavit, and that the information was likely stale as a result. We disagree. The affidavit states that Officer Radke had been given information by the CI within the last seventy-two hours, and Radke's surveillance indicated ongoing criminal activity at the residence. We have no "fixed formula" for deciding when information has become stale, but we consider the nature of the crime being investigated and the property to be searched. United States v. Kennedy, 427 F.3d 1136, 1141 (8th Cir. 2005). In Kennedy, we held that "information of an unknown and undetermined vintage relaying the location of mobile, easily concealed, readily consumable, and highly incriminating narcotics could quickly go stale in the absence of information indicating an ongoing and continuing narcotics operation." Id. at 1142.

Here, there was information indicating an ongoing and continuing narcotics operation, as evidenced by Radke's surveillance. Furthermore, the place to be searched was a residence, rather than an automobile, as in Kennedy. Finally, while the narcotics might have been mobile, easily concealed, and consumable, we cannot say the same thing about the sawed-off shotgun. See United States v. Maxim, 55 F.3d 394, 397 (8th Cir.1995) (holding that information four months old, or even three years old, may supply probable cause for a warrant to search the home of a person suspected of illegal possession of a firearm, due to the continuing nature of the possession offense and the tendency for firearms enthusiasts to keep their weapons for long periods of time).

We defer to the magistrate judge's view of the evidence unless it is unreasonable and impermissible, and we affirm the magistrate judge's probable cause decision unless we are left with a firm conviction that a mistake has been made. Kennedy, 427 F.3d at 1141. The magistrate judge's view of the evidence in this case was both reasonable and permissible, and we have no firm conviction that a mistake has been made. We therefore affirm the finding that there was probable cause to support the search warrant.

We also affirm the magistrate judge's conclusion that a no-knock[4] search was justified in this case, based on the presence of the sawed-off shotgun in a common area of the house, as reported by the reliable CI. The common law requirement that officers must knock and announce their presence before entering is part of the Fourth Amendment reasonableness inquiry. Wilson v. Ark., 514 U.S. 927, 934 (1995). However, officers may enter without knocking in certain situations if the officers reasonably decide there is a need for a forced entry. United States v. Cooper, 168 F.3d 336, 339 (8th Cir. 1999). In Cooper, we found that a no-knock entry was justified where the officers knew the house contained weapons and one of the occupants was considered dangerous. The issuing court had given the officers permission to "approach[] speedily and under cover of darkness." Id.

Here, the issuing judge had actually given permission for a no-knock entry. And the reason for the no-knock entry, the weapon, had not changed from the time Radke applied for the warrant and when the ERU executed it by entering the house. If anything, the circumstances became more exigent because there were four individuals in the house, as opposed to the two that the officers had expected. See Doran v. Eckold, 409 F.3d 958, 964-65 (8th Cir.) (en banc) (holding that for Fourth

_____

[4]Although Radke asked for, and received, permission to execute the search warrant at night, and the parties describe the search as a "no-knock nighttime" search, it is apparently undisputed that, for purposes of Minnesota law, 6:30 p.m., when the warrant was executed, is considered "daytime."

Amendment purposes, the relevant question is whether the police have reasonable suspicion of exigent circumstances at the time they execute the warrant, regardless of whether the police knew those same facts when applying for the search warrant and did not ask for no-knock authorization), cert. denied, 126 S. Ct. 736 (2005). The magistrate judge did not err in concluding that a no-knock search was justified. We also find that those exigent circumstances still existed at the time the warrant was executed. We affirm the district court's denial of Stevens' motion to suppress.

### B.    Insufficient Evidence

Stevens' final allegation on appeal is that there was insufficient evidence at trial to support both the conviction for possession with intent to deliver and for the firearm charge. We disagree. Based on the trial evidence, a reasonable jury could have convicted Stevens of both charges. With regard to the narcotics charge, Stevens' fingerprint on a bag containing a large amount of crack cocaine, bagged for individual sale, and the presence of that bag in a bedroom which contained other of Stevens' possessions, is enough evidence to sustain his conviction. Stevens argues that neither the apartment lease nor any of the utilities were in his name, that several young men had access to the apartment, and therefore the government did not prove a strong enough connection between the drugs and him. However, Radke testified that he had observed Stevens at the apartment several times while conducting surveillance. Stevens also presented these same arguments to the jury. Under our standard of review, we must presume that the jury believed the government's version of the facts. We will not overturn the jury's verdict because it is supported by substantial evidence. United States v. Fitz, 317 F.3d 878, 881 (8th Cir. 2003).

Stevens' arguments regarding the firearm charge also do not carry the day. To sustain a conviction on this charge, the government was required to prove that Stevens possessed a firearm in furtherance of a drug trafficking offense. 18 U.S.C. §

-8-

924(c)(1)(A).  The government argues there was sufficient evidence that Stevens constructively possessed the firearm at issue in this case.

We have held that an individual has constructive possession of contraband if he has ownership, dominion or control over the contraband itself, or dominion over the premises in which the contraband is concealed.  United States v. Cruz, 285 F.3d 692, 697 (8th Cir. 2002).  Mere physical proximity to the contraband is generally not enough, but knowledge of its presence, combined with control is constructive possession.  Id.  Knowledge can be inferred from a defendant's presence where contraband is discovered, when combined with other evidence.  United States v. Serrano-Lopez, 366 F.3d 628, 635-36 (8th Cir. 2004).

Stevens' fingerprints were not found on the sawed-off shotgun.  But the government argues there was substantial circumstantial evidence from which the jury could reasonably infer Stevens' constructive possession of this weapon.  The evidence at trial showed that Stevens possessed a key to the residence, and was seen using that key to unlock the door and enter.  The shotgun was located less than twenty-five feet from the same front door that Stevens unlocked.  Finally, an empty box of 12-gauge shotgun shells, that would fit the sawed-off shotgun recovered, was found in the northwest bedroom where Stevens' other belongings were found.  Under our standard of review of the jury's verdict, we agree with the government that this evidence is enough to show that Stevens constructively possessed the sawed-off shotgun at issue.

Further, the government also proved that this loaded, sawed-off shotgun was possessed in furtherance of a drug trafficking crime.  Our cases make clear that weapons in a "drug house," in plain view, and close in proximity to the dealer and the drugs, supports the inference that the firearm was "possessed so as to be readily available to protect the drugs."  United States v. Hamilton, 332 F.3d 1144, 1150 (8th Cir. 2003).  The jury knew that the gun was openly displayed so that people who entered through the front door could see it immediately.  The jurors also heard

testimony from a government witness that it is common for drug traffickers to use firearms to protect the drugs, proceeds, and themselves, given the cash-based nature of illegal drug trafficking. Taking, as we must, all of these facts in the light most favorable to the jury's verdict, a reasonable jury could have found Stevens guilty of the firearm charge beyond a reasonable doubt.

## III.   CONCLUSION

Accordingly, we affirm the district court.

_____