# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-1618

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Cesar Castro-Higuero, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 16, 2006
Filed: January 16, 2007

_____

Before SMITH, BOWMAN, and COLLOTON, Circuit Judges.

_____

SMITH, Circuit Judge.

Cesar Castro-Higuero was convicted by a jury of conspiracy to distribute and possession with intent to distribute in excess of 100 kilograms of marijuana and aiding and abetting possession with intent to distribute approximately 250 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846 and 18 U.S.C. § 2. The district court[1] sentenced Castro-Higuero to 60 months' imprisonment, the mandatory minimum sentence for the offenses. Castro-Higuero appeals, challenging the admission of his post-arrest statements and the sufficiency of the evidence.

_____

[1]The Honorable David S. Doty, United States District Judge for the District of Minnesota.

Alternatively, he seeks reversal of the denial of his motion for new trial due to an alleged prejudicial statement by the court in the presence of the jury. Finally, Castro-Higuero contests the constitutionality of mandatory minimum sentences. For the reasons set forth below, we affirm.

## I. *Background*

Castro-Higuero and six codefendants were arrested in a warehouse in Minnesota as they unloaded approximately 500 pounds of marijuana from a secret compartment in a tractor-trailer. Law enforcement surveillance cameras recorded Castro-Higuero helping others unload the marijuana from the truck. An undercover agent and a confidential informant present at the scene witnessed Castro-Higuero unloading the drugs, and a body wire worn by the undercover agent recorded the audio events in the warehouse. Castro-Higuero was arrested and taken to the county detention center for questioning.

Special Agent Robert Nance of the Minnesota Bureau of Criminal Apprehension, the undercover agent that witnessed Castro-Higuero unloading the marijuana, interrogated him around 3:15 a.m., approximately one hour after Castro-Higuero's arrest. Because Castro-Higuero spoke limited English, Agent Nance obtained a Spanish interpreter to translate the interrogation. Nance advised Castro-Higuero of his *Miranda* rights as follows:[2]

---

[2]The record contains an audio recording of the interrogation as well as a transcript of the interrogation. The recording was transcribed by a federally certified Spanish interpreter. The transcript contains both a verbatim transcript of everything said on the tape and the English translation of every Spanish-language utterance. The excerpts contained in this opinion only recite the English translations.

AN[3]: So, maybe if you could just tell him that I'm gonna go ahead and read the Miranda Warning, and if you could translate. He has a hard time, uh, understanding, uh, English.

I: Sure.

AN: Okay. Uh, Cesar, you have the right to remain silent.

I: Sir, um, we're going to read you you're rights, it's the Miranda Warning, warning you Miranda. Sir, you have the right to remain silent.

C-H: Okay.

AN: Anything you say can and will be used against you in court.

I: Anything you say can be used against you.

AN: You have the right to talk to a lawr—lawyer now, and have the lawyer present now, or at any time, uh, during questioning.

I: You can have, um, a lawyer present during your questioning.

AN: Okay. If you cannot afford a lawyer, one will be appointed for you without cost.

I: If you cannot afford a lawyer, one will be assigned to you.

AN: Cesar, do you understand each of these rights as I have explained them to you?

I: Uh—oh, um, sir, do you understand the—each of the rights as they have been explained to you?

---

[3]"AN" represents Agent Nance, "I" represents the interpreter, and "C-H" represents Castro-Higuero.

C-H: Yes.

. . . .

After this exchange, Castro-Higuero was asked if he wanted to talk to Agent Nance or at least listen to what Agent Nance had to say. The interpretation of this question confused Castro-Higuero, who then asked, "[Y]ou mean, I can talk? Or, or should I keep quiet till [sic] another time?" Agent Nance then reiterated the Miranda rights, which the interpreter relayed to Castro-Higuero as follows:

AN: [I]f you could just tell him again what the Miranda Warning entailed, uh he does have the right to remain silent. Um, anything he says can and will be used against him in court. Um, he does have the right to talk to a lawyer now, and have the lawyer present at any time, um, certainly those rights, or he can just listen to what I um, have to offer him maybe, if he doesn't have to answer any questions, if he wants to just listen, I can explain to him where we're gonna go from now.

I: [W]hat was just read to you regarding your rights is that it was explained to you that you can and have every right to remain silent if you wish. It was also explained to you that if you wish, um, you can simply request that a lawyer be with you for any type of information or for any conversation you want to establish. In the event that you can pay for one you can request one your own or if not then one will be assigned to you, but the officer wants to know if you, that you'd like to discuss with him his opinion, what he and what he has to, you know, talk to you about, and discuss, you know, options. It's up to you to talk or not talk to him, to share or not share with him whatever it is that you're thinking, I mean that's your right, wanting to talk to him or not wanting to talk to him and just listening and in the end it's up to you.

C-H: Okay.

I: That's why he's asking if you're, um, willing to talk to him.

C-H: Okay, yes, I do want to say some things.

. . .

Castro-Higuero subsequently made incriminating statements to Agent Nance about his involvement in the delivery of the marijuana. During the interrogation, Agent Nance was unarmed and dressed in plain clothes. Castro-Higuero was not handcuffed. Agent Nance testified that Castro-Higuero cooperated fully, spoke freely throughout the questioning, and answered every question asked. Castro-Higuero never requested an attorney or asked that the questioning cease.

During the interrogation, Castro-Higuero explained his involvement in the drug delivery. According to Castro-Higuero, he initially agreed to help one of his codefendants drive a tractor-trailer from California to Wisconsin, believing the tractor-trailer contained only powdered milk. However, several hundred miles into the trip, the codefendant informed Castro-Higuero that the trailer contained a hidden cache of marijuana to be delivered to Minnesota. Castro-Higuero admitted that he could have chosen not to participate in the drug delivery. He agreed to do so, however, because he was promised extra money if he helped deliver the drugs.

Before trial, Castro-Higuero moved to suppress his incriminating statements. The district court adopted the magistrate's report and recommendation and denied Castro-Higuero's motion to suppress. Accordingly, the post-arrest statements were admitted into evidence. At trial, Castro-Higuero testified at length, admitting that he helped deliver and unload the marijuana but also asserting that he did not know the tractor-trailer contained marijuana until well into the trip. Castro-Higuero's trial testimony was consistent with his post-arrest statements to Agent Nance.

At the conclusion of the trial, the court instructed the jury, in part, as follows:

Nothing that I have said or done during the course of this trial is intended in any way to somehow suggest to you what I think your verdict should be. Nothing said in these instructions and nothing in any form of verdict prepared for your convenience is to suggest or convey to you in any way or manner any intimation as to what verdict I think you should return. What the verdict shall be is the exclusive duty and responsibility of the jury.

The court then attempted to dismiss the alternate juror, stating:

[Juror], you're the alternate; sorry about that. All of you have been paying such close attention that I feel terrible having to let you go. Do you have somebody's name or somebody that could call you about the verdict and you could discuss whether you would have agreed with it or not? If you want to do that, or eventually we'll tell you what the verdict was; that will take a while. Whatever you want to do is fine. You can go now; you're excused. Remember all of the cautions I've been giving you until such time you know what the verdict is.

The court then realized that it had accidentally attempted to dismiss the wrong juror. The court instructed the first juror to remain for deliberations and dismissed the actual alternate juror, stating:

[Alternate], remember what I just said, make sure you keep things to yourself. Thank you very much; appreciate you're [sic] being here. We'll let you know exactly what's happened. Frankly, I send a little letter out with a *sentence*. You'll get a note from me if you don't get some other indication. (Emphasis added).

Castro-Higuero did not object or otherwise bring to the court's attention the allegedly prejudicial nature of this comment. The jury subsequently found Castro-

Higuero guilty on both counts. The court then sentenced Castro-Higuero to the mandatory minimum of 60 months' imprisonment.

## II. *Discussion*

On appeal, Castro-Higuero contends that his post-arrest statements should have been suppressed because the translated *Miranda* warnings he was given were ambiguous and confusing. He also argues that insufficient evidence supports the jury's guilty verdict and alleges that an improper, prejudicial statement by the court in the presence of the jury caused a miscarriage of justice. Finally, Castro-Higuero contests the constitutionality of mandatory minimum sentences.

### A. *Motion to Suppress*

Castro-Higuero argues that the translated *Miranda* warnings he was given were ambiguous and confusing and thus his *Miranda* waiver was not knowing, intelligent, and voluntary. Accordingly, he contends that the court erred in denying his motion to suppress the statements.

When reviewing a district court's denial of a motion to suppress, we reverse the court's factual findings only if they are clearly erroneous. *United States v. Jones*, 275 F.3d 673, 678 (8th Cir. 2001). But, the ultimate determination of whether waiver occurred is a question of law subject to de novo review. *United States v. Caldwell*, 954 F.2d 496, 504 (8th Cir. 1992). "We will affirm the district court's denial of a motion to suppress evidence unless it is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear that a mistake was made." *Jones*, 275 F.3d at 678–79.

For a defendant to waive his Fifth Amendment right against self-incrimination, his waiver must be knowing, intelligent, and voluntary. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). A waiver is knowing and intelligent if it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the

decision to abandon it." *United States v. Syslo*, 303 F.3d 860, 865 (8th Cir. 2002). It is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* "To determine whether a waiver or a confession was voluntary, a court looks at the totality of the circumstances and must determine whether the individual's will was overborne." *Id.* at 866. "A court must examine both 'the conduct of the law enforcement officials and the capacity of the suspect to resist pressure to confess.'" *Id.* (quoting *United States v. McClinton*, 982 F.2d 278, 282 (8th Cir. 1992)).

Viewing the totality of the circumstances, we hold that Castro-Higuero validly waived his Fifth Amendment right to remain silent. Castro-Higuero was informed of his rights through an interpreter and answered that he understood his rights. Castro-Higuero understood the interpretation well enough to seek clarification of one of Agent Nance's questions. Agent Nance asked the interpreter to clarify and reiterate the rights to Castro-Higuero and proceeded only after receiving assurance from Castro-Higuero that he understood. Castro-Higuero then stated that he "want[ed] to say some things." Also, Agent Nance, unarmed and in plain clothes throughout the interview, questioned Castro-Higuero without handcuffs and without loud or intimidating speech. Castro-Higuero's will was not overborne, nor was he intimidated, coerced, or deceived into waiving his rights.

Castro-Higuero's argument that he did not know the full extent of his rights because the interpreter only informed him that anything he said could be used against him, instead of informing him that anything he said could be used against him *in court*, is also without merit. *See Evans v. Swenson*, 455 F.2d 291, 295 (8th Cir. 1972) (holding that warnings complied with *Miranda* requirements where the defendant was informed of his rights, including warning that "any statement you do make can be used against you").

Appellant also argues that his waiver was insufficient because of deceptive tactics used by Agent Nance during the interview. These alleged deceptive tactics were the time—3:15 a.m., the use of an over-the-phone interpreter, and the ambiguous choice given appellant of speaking or listening. This argument is without merit. We have previously held that early morning/late night interrogations are not in themselves coercive. *See United States v. Jordan*, 150 F.3d 895, 899 (8th Cir. 1998) (finding that the fact that the police approached the defendant at 3:00 a.m. did not render confession involuntary); *United States v. Pierce*, 152 F.3d 808, 813 (8th Cir. 1998) (finding that interrogation beginning at 4:26 a.m., following 2:57 a.m. arrest, was not coercive). Additionally, the mere fact that the interpreter translated over the phone had no effect on the sufficiency of the waiver, as Castro-Higuero could communicate effectively through the interpreter and adequately understand what was being said. *See United States v. Hernandez*, 913 F.2d 1506, 1510 (10th Cir. 1990) ("[W]hen a defendant is advised of his rights in his native tongue and claims to understand such rights, a valid waiver may be effectuated.").

Finally, the allegedly confusing and ambiguous instruction to Castro-Higuero did not invalidate his waiver. Castro-Higuero was informed of his right to remain silent, and he clearly affirmed that he understood this right. Castro-Higuero then stated that he "want[ed] to say some things." As the district court noted, there was no "indication that he intended to remain silent or that such intentions were ignored." The totality of the circumstances demonstrate that Castro-Higuero was aware of his rights and knowingly, intelligently, and voluntarily waived them. Thus, the district court did not err in denying Castro-Higuero's motion to suppress.

## B. *Sufficiency of the Evidence*

Castro-Higuero contends that the evidence against him was insufficient to convict him. In reviewing a jury verdict for sufficient evidence, we view the evidence in the light most favorable to the verdict and accept all reasonable inferences drawn from the evidence that support the jury's verdict. *United States v. Frauendorfer*, 428

F.3d 1115, 1118 (8th Cir. 2005). We will reverse on the basis of insufficient evidence only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. *Id.*

Examining the evidence in the light most favorable to the government, we hold that substantial evidence supports the jury's verdict. Castro-Higuero admitted, both in statements to Agent Nance and in his testimony at trial, that he continued to drive the tractor-trailer with knowledge that drugs were hidden inside and willingly participated in the delivery and unloading of the drugs. Furthermore, Castro-Higuero acknowledged that he had opportunities to withdraw from involvement in the drug deal but agreed to participate on the promise of more money. Additionally, the government produced video-surveillance footage of Castro-Higuero unloading drugs from the truck. Viewing this evidence in the light most favorable to the government, a reasonable jury could have found Castro-Higuero guilty beyond a reasonable doubt. *See United States v. Ruiz*, 446 F.3d 762, 768–69 (8th Cir. 2006).

C. *Motion for New Trial*

Castro-Higuero also asserts that the district court erred in denying his motion for new trial. He contends that the court's statement to an excused alternate juror using the term "a sentence" rather than "a verdict," as it had in its prior statement, was prejudicial and amounted to a miscarriage of justice. The court made the statement just before the jury began its deliberations. However, Castro-Higuero did not contemporaneously object or otherwise call the court's attention to the allegedly prejudicial nature of its comment. Castro-Higuero argues that this statement implied bias on behalf of the court towards conviction. Following the jury's verdict, Castro-Higuero moved the court for a new trial based on this allegedly prejudicial statement. The court denied the motion for new trial, finding that the statement did not result in a miscarriage of justice because any prejudicial effect of the statement had been mitigated by the court's other statements to the jury and because the court had maintained an otherwise neutral role throughout the trial.

We will reverse a district court's denial of a motion for new trial only if the district court abused its discretion. *Rottlund Co. v. Pinnacle Corp.*, 452 F.3d 726, 731 (8th Cir. 2006). "We have always been reluctant to disturb a judgment of conviction 'by reason of a few isolated, allegedly prejudicial comments of a trial judge.'" *United States v. Lueth*, 807 F.2d 719, 727 (8th Cir. 1986) (quoting *United States v. Bland*, 697 F.2d 262, 265 (8th Cir.1983)). In determining whether the comments of a trial judge require reversal, "[o]ur task is to balance and weigh the comments of the judge against the overall fairness of the trial." *Lueth*, 807 F.2d at 727 (citing *United States v. Singer*, 710 F.2d 431, 436 (8th Cir.1983); *Bland*, 697 F.2d at 265).

In this case, the court's comment about "a sentence" made to the alternate juror in dismissing the alternate was the only alleged prejudicial statement made by the court during the three-day trial. Although this statement was a mistake and should have been clarified, weighing the single comment against an otherwise fair and impartial adjudication, we hold that the district court did not abuse its discretion in denying the motion for new trial.

The potential prejudice of the statement is sufficiently mitigated when placed in the context of the court's other statements to the jury. Prior to addressing the actual alternate juror, the court accurately told the person that it believed to be the alternate juror "we'll tell you what the verdict was." Likewise, in another instruction, the court told the jury as a whole:

> Nothing that I have said or done during the course of this trial is intended in any way to somehow suggest to you what I think your verdict should be. . . . What the verdict shall be is the exclusive duty and responsibility of the jury.

In light of the overall neutrality displayed by the court, the one improper statement—not objected to—did not result in a miscarriage of justice, and the district court did not abuse its discretion in denying the new trial motion.

-11-

#### D. *Mandatory Minimum Sentences*

Lastly, Castro-Higuero argues that *United States v. Booker*, 543 U.S. 220 (2005) made mandatory minimum sentences unconstitutional. Our court has rejected this argument. *United States v. Warford*, 439 F.3d 836, 846 (8th Cir. 2006) (holding that *Booker* does not render statutory minimum sentences unconstitutional). We, therefore, need not address it.

### III. *Conclusion*

For the foregoing reasons, we affirm the district court.

_____