# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-3598

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Thomas Michael Morelos, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 11, 2008
Filed: October 16, 2008

_____

Before MURPHY, BYE, and SHEPHERD, Circuit Judges.

_____

BYE, Circuit Judge.

A jury convicted Thomas Michael Morelos of one count of conspiracy to distribute and possess with intent to distribute more than 500 grams of methamphetamine mixture and more than 100 kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. The district court[1] sentenced him to 306 months of imprisonment followed by five years of supervised release. Morelos appeals his conviction and sentence. We affirm.

_____

[1]The Honorable Donald E. O'Brien, United States District Judge for the Northern District of Iowa.

# I

In April 2006, Morelos met a man named José Bernal at a car dealership in South Sioux City, Nebraska, and the two discussed Bernal fronting Morelos two pounds of marijuana. After Morelos assisted Bernal in distributing the marijuana, Bernal began working with Morelos. Under Morelos's direction, Bernal went to Rockford, Illinois, six or seven times to pick up marijuana and transport it back to Sioux City. Bernal's girlfriend, Christy Swearingen, accompanied him on these trips. Bernal and Swearingen also made two trips to Texas to transport marijuana, using a false-bottomed livestock trailer owned by Morelos on one of the trips. Bernal distributed marijuana in the Sioux City area at the direction of Morelos and gave the money from those sales to Morelos.

Morelos was also involved in trafficking drugs with a man named Raphael Murrillo-Guzmán. For a period of three years, Murrillo-Guzmán followed Morelos's orders with respect to drug trafficking and made deliveries at the direction of Morelos. Murrillo-Guzmán testified that, along with another man named Edwin Alvarez, he delivered about ten "buckets"[2] of methamphetamine under Morelos's supervision.

On January 4, 2007, a drug task force asked a Sioux City police officer to pull over a black GMC Sonoma occupied by Swearingen and Bernal. During the stop, Bernal volunteered that there were four pounds of marijuana in the truck. As a result of the evidence found during the stop and ensuing investigation, a grand jury indicted Morelos for conspiring to distribute and possess with intent to distribute methamphetamine and marijuana. The case went to trial. Following a three-day trial, a jury found Morelos guilty.

---

[2]Murrillo-Guzmán described the buckets used to deliver the methamphetamine as being eight to ten inches high with a diameter of eight inches – the type of bucket used for plaster for drywall. Trial Tr. at 127-28.

At sentencing, the district court calculated Morelos's base offense level at 38 pursuant to United States Sentencing Guidelines (U.S.S.G.) § 2D1.1(a)(3)(c)(1) based on the amount of methamphetamine and marijuana involved in the offense. The district court also found Morelos was a manager or supervisor in a drug conspiracy involving five or more people and added three levels to the base offense level under U.S.S.G. § 3B1.1(b). With a criminal history category of II, Morelos's advisory guideline sentencing range was 360 months to life. Acting *sua sponte*, the district court gave Morelos a fifteen percent reduction from the bottom end of the advisory guideline range and imposed a sentence of 306 months followed by five years of supervised release.

Morelos filed a timely appeal challenging the sufficiency of the evidence to support the conviction. Morelos also appealed his sentence challenging the drug amounts attributed to him, and the three level enhancement for his role in the offense. Morelos also contends on appeal his 306-month sentence is unreasonable.

II

We first address Morelos's challenge to the sufficiency of the evidence "viewing [the] evidence in the light most favorable to the government[.]" United States v. Piwowar, 492 F.3d 953, 955 (8th Cir. 2007). "The standard for determining the sufficiency of the evidence is strict, and a guilty verdict should not be lightly overturned." United States v. Jiminez-Perez, 238 F.3d 970, 972-73 (8th Cir. 2001). We will only reverse if no reasonable jury could have found Morelos guilty beyond a reasonable doubt. See United States v. Dabney, 367 F.3d 1040, 1042 (8th Cir. 2004).

To convict Morelos, the government was required to prove beyond a reasonable doubt that: (1) two or more persons reached an agreement to distribute and possess with intent to distribute a controlled substance; (2) Morelos voluntarily and

intentionally joined the agreement; and (3) at the time Morelos joined the agreement, he knew its essential purpose. See United States v. Harris, 493 F.3d 928, 931 (8th Cir. 2007) (citing United States v. Sherman, 440 F.3d 982, 990 (8th Cir. 2006)).

The evidence produced at trial showed Morelos conspired with several persons to possess and distribute methamphetamine and marijuana. Three cooperating witnesses testified they were personally involved with Morelos's drug dealing activities. The testimony of each witness was corroborated by testimony from the other co-conspirators, as well as disinterested witnesses, phone records, financial records, and currency found during a search of Morelos's residence. This evidence was more than sufficient to support the jury's verdict, notwithstanding Morelos's challenge to the credibility of the three cooperating witnesses. See Dabney, 367 F.3d at 1043 ("[W]e do not review questions involving the credibility of witnesses, but leave credibility questions to the jury."); see also United States v. Frauendorfer, 428 F.3d 1115, 1118 (8th Cir. 2005) (holding the testimony of a single cooperating co-conspirator is sufficient to support a guilty verdict).[3]

We next address Morelos's sentencing challenges to the drug amounts attributed to him, and the three-level enhancement he received for being a manager or supervisor in a conspiracy involving five or more persons. We review the district court's factual findings on both issues for clear error. United States v. Thompson, 210 F.3d 855, 860-61 (8th Cir. 2000).

---

[3]Morelos also asserts his trial counsel was ineffective because he failed to object to certain statements at trial. The record below is incomplete on this issue, however, and the district court did not address it. We therefore decline to address it. See United States v. Logan, 49 F.3d 352, 361 (8th Cir. 1995) (refusing to address ineffective assistance claim on direct appeal when the district court had not examined the merits of the claim); United States v. Kenyon, 7 F.3d 783, 785 (8th Cir. 1993) (declining to address ineffective assistance claim on direct appeal when a proper factual record was not made in the district court).

With respect to drug quantity, the district court based its findings on the evidence presented at trial, which showed: (1) Bernal and Swearingen made six or seven trips to Rockford, Illinois, transporting between 100 and 200 pounds of marijuana each time; (2) Bernal and Swearingen made two trips to Texas, transporting just over 250 pounds of marijuana in total; (3) Murrillo-Guzmán and Alvarez delivered ten "buckets" of methamphetamine at the direction of Morelos; (4) Morelos received a shipment of ten pounds of pure methamphetamine at a farm in Nebraska which, when cut, resulted in approximately fifty pounds of a mixture containing methamphetamine; and (5) Alvarez delivered 700 pounds of marijuana to Rockford, Illinois, at the direction of Morelos.  Based on this evidence the district court attributed the equivalent of 46,060 kilograms of marijuana to Morelos, triggering a base offense level of 38 (requiring 30,000 kilograms or more of marijuana).

Morelos does not contend the trial testimony was insufficient to support a finding of the equivalent of 46,060 kilograms of marijuana.  Instead, Morelos argues the district court erred because it did not independently evaluate the credibility of the trial testimony at the time of sentencing.  See United States v. Gutierrez, 437 F.3d 733, 736-37 (8th Cir. 2006) (concluding a district court erred by relying upon a jury verdict to impose an obstruction enhancement, and by refusing to make an independent determination as to drug quantity at the time of sentencing).  We disagree.

At sentencing, the district court discussed the credibility of the trial witnesses as to the drug amounts involved.  After dwelling on its concerns about witness credibility – noting in particular that Murrillo-Guzmán's testimony may have had shortcomings – the district court ultimately concluded "I don't think that I can say and find here that he too was worthless as a witness."  Sent. Tr. at 24.  Additionally, the district court initially expressed concerns about the absence of Morelos's name in documents relating to Edwin Alvarez.  After being informed Morelos was, in fact, identified in these documents but under the name "Santana," the district court accepted

-5-

the explanation. This colloquy regarding Edwin Alvarez, as well as the comments regarding Murillo-Guzmán, indicate the district court independently evaluated the credibility of the witnesses with respect to drug quantity at the time of sentencing. Our review of the record satisfies us that, while the district court may have had concerns about witness credibility, it ultimately independently found a sufficient amount of drugs could be attributed to Morelos to trigger a base offense level of 38.

With respect to the three-level enhancement for role in the offense, Morelos asserts the evidence does not support the district court's conclusion he was a manager or supervisor of a conspiracy involving at least five people. We disagree.

The district court found there were at least five people involved in the conspiracy: Morelos (see United States v. Payne, 119 F.3d 637, 646 (8th Cir. 1997) (indicating the defendant counts as a participant)), Bernal, Alvarez, Murillo-Guzmán, and Swearingen. The enhancement under § 3B1.1(b) applies as long as Morelos managed or supervised at least one other member of the conspiracy. United States v. Gordon, 510 F.3d 811, 818 (8th Cir. 2007). Bernal, Murillo-Guzmán, and Alvarez all testified that at some point during the conspiracy they were acting at the direction of Morelos. Morelos directed Bernal to go on six or seven trips to Rockford, Illinois, and to Texas; Morelos directed Murillo-Guzmán to deliver ten "buckets" of methamphetamine; and Morelos paid Alvarez $1000 a week to transport drugs and supplied him with the vehicle used to transport the drugs. Given this evidence, the district court did not clearly err in finding Morelos was a manager or supervisor.

Finally, Morelos challenges the reasonableness of the 306-month sentence he received. More specifically, Morelos contends the district court – in imposing a fifteen percent downward variance *sua sponte* – mistakenly believed its discretion to vary downward even more was limited by United States v. Gall, 446 F.3d 884 (8th Cir. 2006), which was later reversed by Gall v. United States, 128 S.Ct. 586 (2007). Because Morelos failed to object to the district court's interpretation of the applicable

law at the time of sentencing, we review this issue for plain error. See Johnson v. United States, 520 U.S. 461, 467 (1997) (holding plain error review applies absent a preserved objection even when the error results from a change in the law that occurs while the case is pending). Thus, Morelos must show there was an error, the error was plain, his substantial rights were affected, and he must convince us to exercise our discretion to correct the error because it seriously affected the fairness, integrity, or public reputation of the judicial proceedings. E.g., United States v. Marston, 517 F.3d 996, 1004 (8th Cir. 2008).

Morelos argues the Supreme Court's decision in Gall "very well could have affected the district court's opinion on how much of a variance he could legally give [Morelos]." Appellant's Br. at 24. In Gall, however, the Supreme Court directed us to "review all sentences – whether inside, just outside, or significantly outside the Guidelines range – under a deferential abuse-of-discretion standard." 128 S.Ct. at 591. The Supreme Court also noted if a district court "decides that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one." Id. at 597.

In this case, applying the abuse-of-discretion standard as we must (through the lens of plain error review), it is significant the ultimate sentence imposed by the district court was below the applicable guideline range. Additionally, the district court did not state any "sufficiently compelling" reasons that might have justified a more significant variance. Finally, we see nothing in the record to indicate the district court may have been inclined to impose a more favorable sentence, but refrained from doing so because it felt constrained by then-applicable law. Under these circumstances, Morelos has failed to convince us a plain error affected his substantial rights, or that the district court abused its discretion by imposing an unreasonable sentence.

## III

We affirm Morelos's conviction and sentence.

_____